UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALEXANDER ALCANTARA, *pro se*,               :
                                             :
                         Petitioner,         :
                                             :     **MEMORANDUM & ORDER**
            -against-                         :         13-cv-3462 (DLI)
                                             :
UNITED STATES OF AMERICA,                     :
                                             :
                         Respondent.         :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, Chief United States District Judge:**

*Pro se* Petitioner Alexander Alcantara ("Petitioner") filed this Petition[1] for a writ of habeas corpus, challenging his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). *See generally*, Dkt. Entry No. 1 ("Petition"). On August 1, 2008, Petitioner pled guilty to one count of conspiracy to distribute cocaine base and cocaine and one count of cocaine distribution in violation of 21 U.S.C. §§ 841, 846. *See generally*, Docket 06-CR-265, Entry Nos. 65, 90. On September 15, 2010, this Court sentenced Petitioner to 120 months' imprisonment and five years of supervised release. *See Id.*, Dkt. Entry No. 390. Petitioner challenges his sentence on the ground that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Petition at 2-3. Pursuant to Section 2255, Petitioner also requests an evidentiary hearing to develop further the record regarding the merits of his claim. *Id.* at 13. The government filed an opposition to the Petition, *See* Government's Opposition to Petition ("Gov't Opp'n"), Dkt. Entry No. 6 at 1-2, and Petitioner filed a reply in further support of the Petition, *See* Petitioner's

---

[1] In reviewing Petitioner's motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Accordingly, the Court interprets the Petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis, citations and internal quotation marks omitted).

Reply ("Reply"), Dkt. Entry No. 8.  For the reasons set forth below, the Petition and Petitioner's demand for an evidentiary hearing are denied.

## BACKGROUND

Petitioner was arrested on August 23, 2006 in connection with an investigation into the trafficking and distribution of cocaine in the Bushwick section of Brooklyn.  *See* Gov't Opp'n at 1-2.  Upon his arrest, Petitioner was interviewed by investigators and he provided information regarding the drug transactions in which he was involved.  *Id.* at 2.  Petitioner was shown video recordings and listened to tape recordings that included his involvement in drug transactions.  *Id.* He also stated to investigators that he had supplied a co-conspirator with four to five kilograms of cocaine per month for the previous six months, for a total of sixty to eighty kilograms of cocaine. *Id.*

On July 2, 2007 and April 30, 2008, investigators again interviewed Petitioner pursuant to proffer agreements.  *Id.*  At these interviews, Petitioner made statements that were inconsistent with his August 23, 2006 interview statements.  Petitioner stated that he did not supply drugs to his co-conspirator, that his co-conspirator invited him to join the drug business, and that he only distributed between thirteen and fifteen kilograms of cocaine in total.  *Id.* at 2-3.  Investigators warned Petitioner that he could be prosecuted for making false statements under 18 U.S.C. § 1001. *Id.* at 3.  Through subsequent investigation, the investigators determined that Petitioner, in fact, had made false statements in his subsequent interviews.  *Id.*

On August 1, 2008, Petitioner pled guilty to Counts One and Two of the superseding indictment.  *See* Docket 06-CR-265, Entry No. 90.  Count One carried a statutory minimum sentence of ten years and a statutory maximum of life imprisonment, and Count Two carried a statutory minimum of five years and a statutory maximum of forty years.  Cooperation Agreement,

Ex. A to Gov't Opp'n, Dkt. Entry No. 6-1 ("Cooperation Agreement"). An initial Pre-Sentence Report ("PSR") filed on January 16, 2009 included a two-level enhancement for obstruction of justice as a result of the false statements made on July 2, 2007 and April 30, 2008. Gov't Opp'n at 3-4. The initial PSR also included a two-level enhancement for Petitioner's leadership role in the conspiracy. *See* duBoulay Ltr. dated March 6, 2009 ("Mar. 6 Ltr."), Ex. H to Gov't Opp'n, Dkt. Entry No. 6-8. On March 6, 2009, Petitioner's counsel submitted a letter to the probation department objecting to the sentencing guideline range ("SGR") with respect to the weight of cocaine attributable to him, and the inclusion of enhancements for obstruction of justice and Petitioner's leadership role. *See Id.*

On August 5, 2009, Petitioner entered into a Cooperation Agreement with the U.S. Attorney's Office. *See generally*, Cooperation Agreement. The Cooperation Agreement stated, in pertinent part, that the U.S. Attorney's Office "will advise the Court and the Probation Department of information relevant to sentencing, including all criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence." *See Id.* at ¶ 2. Subsequent to entering into the Cooperation Agreement, Petitioner admitted to the U.S. Attorney's Office that he had lied to the government and minimized his own role in the conspiracy during the previous proffer sessions. Gov't Opp'n at 3. The January 16, 2009 PSR pre-dated Petitioner's cooperation.

Following his cooperation, the probation department issued a revised PSR. *Id.* at 4. The revised PSR calculated Petitioner's base offense level to be thirty-eight. *Id.* The revised PSR included a two-level enhancement for possession of a firearm during the commission of an offense, which Petitioner alleges he disclosed during a proffer session with the government, a two-level increase for obstruction of justice for the prior false statements, and a four-level increase for

Petitioner's leadership role in the conspiracy. *Id.* It also included a three-level reduction for acceptance of responsibility, based on his cooperation and testimony at trial. *Id.*

On August 18, 2010, Petitioner's attorney submitted a letter to Probation, objecting to the base offense level calculation based on the weight of cocaine distributed, the role enhancement for Petitioner's leadership role in the conspiracy, and the enhancement for obstruction of justice. *See* duBoulay Ltr. dated August 18, 2010 ("Aug. 18 Ltr."), Ex. B to Gov't Opp'n, Dkt. Entry No. 6-2. On August 23, 2010, Petitioner's counsel submitted an additional letter to the probation department outlining additional objections to the revised PSR, including that Petitioner "denies making the statement in a post arrest interview that he kept a second gun at a second apartment" and "Mr. Alcantara has truthfully and fully noted the instances when he possessed a weapon." *See* duBoulay Ltr. dated August 23, 2010 ("Aug. 23 Ltr."), Ex. C to Gov't Opp'n, Dkt. Entry No. 6-3.

At a sentencing hearing held on September 15, 2010, the Court granted the government's motion pursuant to U.S.S.G. § 5K1.1 for a downward departure based on the fact that Petitioner had "extensively and productively cooperated with investigators," and a finding that Petitioner's testimony at trial was truthful. *United States v. Batista*, 684 F.3d 333, 339 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 1458 (2013). The Court ruled on the parties' objections to the PSR, imposing a two-level guideline enhancement for obstruction of justice, a four-level guideline enhancement for Petitioner's leadership role in the offense, and a two-level guideline enhancement for possession of a firearm during a narcotics trafficking offense. *Id.* The Court further found that Petitioner was responsible for 150 kilograms of cocaine, instead of the 80-110 kilograms Petitioner admitted selling during trial. *Id.* The Court calculated Petitioner's base offense level to be forty-three, and Petitioner's Criminal History Category to be I, resulting in a recommended SGR of life imprisonment. *Id.*

The Court downwardly departed, based on his substantial assistance to the government, and sentenced Petitioner to 120 months' imprisonment and five years of supervised release. *See* Docket 06-CR-265, Entry No. 390. Petitioner appealed his conviction to the Second Circuit Court of Appeals alleging that his sentence was substantively unreasonable because the district court erred in: (1) miscalculating his base offense level by holding him responsible for 150 kilograms of cocaine and four and one half grams of crack cocaine; (2) improperly applying an obstruction of justice enhancement; (3) improperly applying a leadership role enhancement; (4) and imposing a sentence that was more than twice as long as the sentence of another, allegedly more culpable codefendant. *See Batista*, 684 F.3d at 339. His conviction was affirmed on July 30, 2012. *Id.* at 347.

On June 13, 2013, Petitioner filed the instant motion. Petitioner asks the Court to vacate, set aside, or amend his sentence because he was deprived of effective assistance of counsel guaranteed to him under the Sixth Amendment to the United States Constitution. Specifically, Petitioner contends that his counsel was ineffective in: (1) failing to object to the four-level leadership enhancement; (2) advising him that he would not be charged with obstruction of justice or receive an obstruction of justice enhancement, if he told the government the truth that implicated codefendant Luis Batista (and he further asserts that he would not have cooperated had he known he would receive an obstruction of justice enhancement); (3) failing to object to the quantity of crack cocaine attributed to him in calculating his base offense level; and (4) failing to object to the two-level firearm enhancement. *See generally*, Petition. Petitioner also asks the Court to hold an evidentiary hearing before ruling on his Petition. *See Id.* at 13. For the reasons discussed below, Petitioner's motion is denied in its entirety.

# DISCUSSION

## I. Legal Standard

### A. Section 2255

Under § 2255, "a sentencing court may vacate, set aside or correct a conviction or sentence imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Relief generally is "available only for a constitutional error, defect of jurisdiction, or an error of law constituting a fundamental defect which inherently results in a complete miscarriage of justice." *Scala v. United States*, 2010 WL 3780320, at *1 (E.D.N.Y. Sept. 21, 2010) (citations and internal quotation marks omitted).

### B. Issues Previously Raised on Appeal

It is well settled that a Section 2255 motion may not relitigate issues previously raised on direct appeal. *See, e.g.*, *Cantor v. United States*, 205 F.3d 1321, *1 (2d Cir. 2000) (citing *United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997) ("It is well-established that issues decided on direct appeal may not be relitigated in the context of a petition under § 2255."), *cert. denied*, 530 U.S. 1245 (2000)); *Simmons v. United States*, 2014 WL 4628700, at *2 (E.D.N.Y. Sept. 15, 2014) ("[H]aving rejected his objection [to the court's application of the sentencing enhancement], he cannot reargue it in his § 2255 petition."). An exception to this rule exists for intervening changes in the law. *See Scala*, 2010 WL 3780320, at *1 (citing *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980)). This exception is not applicable here.

Courts reviewing Section 2255 claims will consider arguments not raised on direct appeal if the petitioner can demonstrate "cause" for failing to raise the claims and "actual prejudice," or that the petitioner is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622-23 (1998) (citations and internal quotation marks omitted). However, ineffective assistance of

counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Nonetheless, a petitioner cannot simply recast previously made arguments as ineffective assistance claims. *See Cakoni v. United States*, 2015 WL 1726448, at *10 (S.D.N.Y. Apr. 15, 2015) (citing *Yick Man Mui v. United States*, 614 F.3d 50, 55 (2d Cir. 2010)) ("The Second Circuit already rejected these arguments . . . and they cannot be recast as ineffective assistance arguments and relitigated via a § 2255 petition in the absence of an intervening change in the law."); *Brown v. United States*, 1996 WL 479248, at *4 (S.D.N.Y. Aug. 23, 1996) ("[Petitioner's] attempt to recast his substantive arguments regarding sentencing errors in terms of ineffective assistance of counsel is unavailing.").

## C.    Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) "his attorney's performance 'fell below an objective standard of reasonableness,' in light of 'prevailing professional norms,'" and (2) "'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Caracappa*, 614 F.3d 30, 46 (2d Cir. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)) (citing *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005)). Courts reviewing an ineffective assistance of counsel claim "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'" *Strickland*, 446 U.S. at 689. The Court must "be watchful to eliminate the distorting effects of hindsight." *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (citation and internal quotation marks omitted). "In the context of a guilty plea, in order to satisfy the 'prejudice' prong, 'the

defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Velasquez v. Ercole*, 878 F. Supp.2d 387, 406 (E.D.N.Y. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## II.    Analysis

### A.    Arguments Raised on Direct Appeal

Petitioner contends that his counsel was constitutionally ineffective in failing to object to: (1) the weight of the cocaine attributed to him; (2) the leadership role sentencing enhancement; and (3) the obstruction of justice sentencing enhancement. *See generally*, Petition. The government argues in opposition that each of these claims is procedurally barred because each was raised previously on direct appeal. Gov't Opp'n at 6.

Here, each of Petitioner's arguments are identical to the arguments made before the Second Circuit, with the minor addition that Petitioner now claims that each of them demonstrates constitutionally ineffective assistance of counsel. For example, Petitioner argued on appeal that the Court erred in "calculating his base offense level" by finding that he "should be held responsible for at least 150 kilograms of cocaine," which included crack cocaine. *See Batista*, 684 F.3d at 344. Now he argues that he was deprived of effective assistance of counsel based on his "[counsel's] failure to object to the government's conversion of the powder cocaine he sold to his co-defendant[,] . . . which [the co-defendant] converted to crack cocaine." Petition at 11-12. Petitioner also argued on appeal that the Court erred in "enhancing his offense level by four levels—the designated enhancement for 'leaders' or 'organizers.'" *Batista*, 684 F.3d at 344-47. He now argues that he was deprived of effective assistance of counsel, based on his "counsel's failure to object to the assignment of [a] four point[] leadership enhancement." Petition at 10-11. Finally, Petitioner argued on appeal that the Court erred in enhancing his offense level for

obstruction of justice "where [Petitioner] in fact cooperated with the government from the beginning." *See* Appellant's Brief, Ex. F to Gov't Opp'n, Dkt. Entry No. 6-6 at 26-34. Petitioner now alleges that he was deprived of effective assistance of counsel due to his "[counsel's] failure to object to the two points enhancement . . . , which came from the information he had divulged to the government . . . ." Petition at 7-10.

These arguments are nothing more than thinly veiled attempts to relitigate the same issues previously decided by this Court and affirmed by the Second Circuit. While a petitioner can assert ineffective assistance of counsel claims for the first time in a Section 2255 motion, *See Massaro*, 538 U.S. at 504, the Court sees no reason to address the identical substantive arguments already considered and rejected by the Circuit simply because Petitioner now relabeled them as ineffective assistance claims. *See Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986)) ("'[S]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.'"); *Cakoni*, 2015 WL 1726448, at *10 ("The Second Circuit already rejected these arguments . . . and they cannot be recast as ineffective assistance arguments and relitigated via a § 2255 petition . . . .") (citation omitted); *Brown*, 1996 WL 479248, at *4 ("[Petitioner's] attempt to recast his substantive arguments regarding sentencing errors in terms of ineffective assistance of counsel is unavailing."). Therefore, Petitioner's claims based on the cocaine and crack cocaine weight attributed to him, the leadership enhancement, and the obstruction of justice enhancement, once again are denied.

## B.    The Firearm Enhancement

Petitioner contends that he initially did not wish to cooperate with the government, but, on the advice of counsel, and upon assurances from his counsel that "he [would] not get . . . additional

time or an enhancement[,] . . . petitioner changed his mind and started cooperating with the government." Petition at 7-8. Petitioner subsequently disclosed to the government that he had possessed a firearm belonging to one of his codefendants, a fact he claims the government did not otherwise know. *Id.* at 8. Petitioner contends that his counsel was constitutionally ineffective for failing to object to the government's use of the information about the firearm and the corresponding two-level enhancement for the use of a firearm during the commission of a drug trafficking offense. *Id.* at 8-10. In opposition, the government argues that Petitioner's claim is meritless because the Cooperation Agreement permitted the government to disclose Petitioner's criminal activity to the Court for sentencing purposes. Gov't Opp'n at 7.

As an initial matter, Petitioner offers no cause for his failure to raise this issue on appeal. *See Scala*, 2010 WL 3780320, at *1 ("Courts will not entertain § 2255 claims that were not raised on direct appeal, unless a petitioner can show that there was 'cause' for failing to raise the claims earlier and 'prejudice' resulting therefrom." (citation omitted)). Nor does he demonstrate how he was prejudiced in not raising the argument on appeal, or that he is actually innocent. *Id.* Therefore, this claim is procedurally barred. *See United States v. Thorn*, 659 F.3d 227, 233 (2d Cir. 2011) (holding claim was procedurally barred where "[Petitioner] cannot carry his burden to demonstrate good cause" and "[Petitioner] cannot satisfy the actual-innocence exception to procedural default"). Even assuming this issue is properly before the Court, it lacks merit.

First, Petitioner is incorrect that his counsel did not object to the use of the firearm information at sentencing. By letter dated August 23, 2010, Petitioner's counsel noted that "Defendant denies making the statement in a post arrest interview that he kept a second gun at a second apartment, a[s] stated in Paragraph 57 of the PSR." *See* Aug. 23 Ltr. His counsel further wrote that "[v]ague inculpatory statements such as that contained in [the PSR regarding

Petitioner's gun possession] do not further the cause of a fair report of the defendant's role in this case." *Id.*

Second, the Cooperation Agreement required the U.S. Attorney's Office to advise the Court and Probation of any criminal activity in which the Petitioner was involved for purposes of sentencing. The Cooperation Agreement states that, "[t]he Office will advise the Court and the Probation Department of information relevant to sentencing, including all criminal activity engaged in by the defendant, and such information *may be used by the Court* in determining the defendant's sentence." Cooperation Agreement at ¶ 2 (emphasis added). Furthermore, the Cooperation Agreement makes clear that "[n]o statements made by the defendant during the course of this cooperation will be used against him except as provided in paragraphs 2, 8, and 9," (*Id.* at ¶ 4(b)), and required Petitioner "at all times [to] give complete, truthful, and accurate information and testimony, and must not commit, or attempt to commit, any further crimes," (*Id.* at ¶ 8). Thus, Petitioner was obligated to be truthful and faced additional consequences if he was not.

In any event, although Petitioner now argues that it was improper to use his statements obtained through his cooperation regarding his possession of a firearm, Petitioner also made references to possessing a firearm in his sworn testimony at the trial of his co defendant Luis Batista. *See* Excerpt of Trial Tr., Ex. G to Gov't Opp'n, Dkt. Entry No. 6-7 at 1508:15-16 ("Q. Did you ever possess any guns? A. Yes."). Therefore, even if the statements made during his cooperation should have been excluded, Petitioner introduced the same information at trial under oath.

Petitioner has not demonstrated either deficient counsel or prejudice. Petitioner's counsel's letter fairly can be seen as an objection to the Court's consideration of the firearm possession at sentencing. However, even if Petitioner's counsel had not objected, counsel is not required to

make clearly meritless objections. *See, e.g.*, *Harris v. United States*, 2010 WL 2710600, at *3 (E.D.N.Y. July 6, 2010) ("Counsel cannot be faulted for failure to register a meritless objection."); *Torres-Cuesta v. United States*, 2010 WL 3928588, at *5 (E.D.N.Y. Sept. 30, 2010) ("Counsel is not required to present meritless arguments to the court."); *Perez v. United States*, 1997 WL 661426, at *4 (S.D.N.Y. Oct. 23, 1997) ("Defense counsel's failure to object, then, cannot have resulted in actual prejudice to petitioner, as the objection would have been meritless."). Since the Cooperation Agreement required the U.S. Attorney's office to inform Probation and the Court of any criminal activity by Petitioner, any objection by Petitioner's counsel to the use of such information would have been meritless. In addition, given that the Court's sentence was a significant downward departure from the SGR, the inclusion of the two-level firearm enhancement did not prejudice Petitioner. *See Batista*, 684 F.3d at 346-47 (holding that, even if the court had not applied the four-level leadership enhancement, Petitioner's sentence would have been the same: significantly less than the guideline recommendation).

Finally, Petitioner argues that he would not have cooperated had he known he would have received an enhancement for obstruction of justice. Petition at 9-10. The Court is not persuaded by this claim. The record clearly establishes that Petitioner faced an obstruction of justice enhancement because the enhancement was included in the initial PSR prior to Petitioner entering into the Cooperation Agreement. In fact, Petitioner may have been aware of the possibility of an obstruction enhancement as early as the August 23, 2006 interview when he was warned of potential prosecution for making false statements under 18 U.S.C § 1001. In addition, the Cooperation Agreement clearly states that sentencing is in the discretion of the district judge, and Petitioner conceded that he made false statements to the government, which the government was obligated to disclose to the Court. *See* Cooperation Agreement at ¶¶ 2, 6. Notably, Petitioner

cannot demonstrate prejudice as a result of his cooperation, notwithstanding the obstruction of justice enhancement, since Petitioner's sentence was a significant downward departure from the applicable SGR of life imprisonment.

### C.    Necessity of an Evidentiary Hearing

Petitioner requests that the Court hold an evidentiary hearing to develop the record with respect to his ineffective assistance claims. Petition at 13. "The decision whether to hold an evidentiary hearing on a 2255 motion is generally left to the discretion of the district court." *Swerbilov v. United States*, 2005 WL 1177938, at *2 (E.D.N.Y. May 18, 2005) (citing *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1997)). Where, as here, the Court has familiarity with the case, it can rely on such familiarity in dismissing a petition without a hearing. *See Stokes v. United States*, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001) (citing *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990)); *See also Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2011) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)) ("[A]lthough a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in district court for a full hearing") (internal quotation marks omitted). "'The district court is permitted to expand the record to include affidavits or other written submissions in order to decide disputed facts.'" *Roberts v. United States*, 2014 WL 4199691, at *4 (E.D.N.Y. Aug. 22, 2014) (quoting *Kapelioujnyi v. United States*, 779 F. Supp.2d 250, 254 (E.D.N.Y. 2009) (citing *Chang*, 250 F.3d at 86)).

Here, as the above analysis evidences, it is abundantly clear that the record is sufficient to decide Petitioner's motion without an evidentiary hearing. First, three of Petitioner's four claims were appealed to the Second Circuit, where Petitioner was represented by counsel. Petitioner's brief to Second Circuit was included with the government's opposition to the Petition. *See*

Appellant's Brief, Ex. F to Gov't Opp'n, Dkt. Entry No. 6-6. Second, as to Petitioner's fourth claim, regarding the firearm enhancement and Petitioner's cooperation, the government's opposition includes numerous additional documents that supplement the record, including letters from Petitioner's counsel detailing Petitioner's objections to the PSRs concerning the firearm enhancement and the Cooperation Agreement at issue. *See generally*, Cooperation Agreement; Aug. 23 Ltr. Furthermore, Petitioner filed a reply to the government's opposition to the Petition, further adding to the record. *See generally*, Reply. Given the Court's familiarity with the case, and that both parties have supplemented the record, the Court finds in its discretion that an evidentiary hearing would "add little or nothing to the written submissions" and, therefore, is not required. *See Chang*, 250 F.3d at 86.

## CONCLUSION

For the reasons set forth above, Petitioner's Section 2255 motion is denied in its entirety, and Petitioner's request for an evidentiary hearing is denied as unnecessary. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *See* Fed. R. App. P. 22(b); *Lucidore v. New York State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
　　　 September 30, 2017

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　Chief Judge